## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

GEORGE R. JARKESY, JR. AND PATRIOT28, L.L.C.,
*Petitioners*

v.

SECURITIES AND EXCHANGE COMMISSION,
*Respondent.*

On Petition for Review of an Order of the Securities and Exchange Commission

**BRIEF OF PHILLIP GOLDSTEIN, MARK CUBAN, AND NELSON OBUS AS *AMICI CURIAE* IN SUPPORT OF PETITIONERS AND REVERSAL OF THE SECURITIES AND EXCHANGE COMMISSION'S ORDER**

Samuel W. Cooper

**PAUL HASTINGS LLP**
600 Travis Street
Fifty-Eighth Floor
Houston, TX 77002
(713) 860-7305

Nicolas Morgan
Janice J. Lee
Brian S. Kaewert
Joseph N. Montoya

**PAUL HASTINGS LLP**
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071
(213) 683-6181

*Counsel for Phillip Goldstein, Mark Cuban, and Nelson Obus*

# TABLE OF CONTENTS

STATEMENT OF INTERESTED PERSONS ......................................................... 1

INTEREST OF THE *AMICI CURIAE* ................................................................ 3

INTRODUCTION ............................................................................................... 5

ARGUMENT ...................................................................................................... 7

    I.     The Seventh Amendment to the United States Constitution
          Guarantees SEC Defendants the Right to a Jury ................................. 7

    II.    The SEC's Forum Shopping Leads to Unconstitutionally
          Unequal Protection ........................................................................... 10

    III.   Congress Has Not Assigned the SEC a Function Incompatible
          with the Seventh Amendment Right to a Jury ................................... 14

    IV.   The SEC Regularly Employs a Constitutional Method For
          Federal Securities Law Liability Determinations ............................. 16

CONCLUSION .................................................................................................. 18

CERTIFICATE OF SERVICE ........................................................................... 20

CERTIFICATE OF COMPLIANCE .................................................................. 21

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*,
430 U.S. 442 (1977)......................................................................14, 16

*Commodity Futures Trading Comm'n v. First Nat'l Monetary Corp.*,
565 F. Supp. 30 (N.D. Ill. 1983) ..........................................................12

*Daniel Int'l Corp. v. Fischbach & Moore, Inc.*,
916 F.2d 1061 (5th Cir. 1990) .............................................................11

*Engquist v. Oregon Dep't of Agric.*,
553 U.S. 591 (2008)..............................................................................12

*Feltner v. Columbia Pictures Television, Inc.*,
523 U.S. 340 (1998)................................................................................8

*Goldstein v. SEC*,
451 F.3d 873 (D.C. Cir. 2006)................................................................4

*Gupta v. SEC*,
796 F. Supp. 2d 503 (S.D.N.Y. 2011) .............................................12, 13

*Johnson v. California*,
543 U.S. 499 (2005)..............................................................................11

*Lucia v. SEC*,
138 S. Ct. 2044 (2018)............................................................................3

*Massachusetts Bd. of Retirement v. Murgia*,
427 U.S. 307 (1976)..............................................................................11

*SEC v. Capital Sols. Monthly Income Fund, LP*,
818 F.3d 346 (8th Cir. 2016) .................................................................8

*SEC v. Cuban*,
No. 3:08-cv-02050-D (N.D. Tex. Oct. 16, 2013) .................................4

*SEC v. Life Partners Holdings, Inc.*,
854 F.3d 765 (5th Cir. 2017) .................................................8, 9, 10, 16

*SEC v. Lipson*,
278 F.3d 656 (7th Cir. 2002) .................................................................8

*SEC v. Obus*,
No. 1:06-CV-3150 (S.D.N.Y. June 2, 2014) ........................................4

*SEC v. Seghers*,
    298 F. App'x 319 (5th Cir. 2008) ...............................................*passim*

*SEC v. Seghers*,
    No. 3:04-CV-1320-K (N.D. Tex. June 16, 2004) ................................9

*Seghers v. SEC*,
    548 F.3d 129 (D.C. Cir. 2008) .................................................6, 17, 18

*Standard Oil Co. of Cal. v. Arizona*,
    738 F.2d 1021 (9th Cir. 1984) ........................................................11

*Tull v. United States*,
    481 U.S. 412 (1987) .................................................................7, 8

*Village of Willowbrook v. Olech*,
    528 U.S. 562 (2000) ..................................................................12

**Statutes, Regulations, and Rules**

15 U.S.C.
    § 80b-3(f) ...............................................................................17
    § 80b-9(e)(1) .......................................................................15, 16
    § 80b-14(a) .............................................................................15

29 U.S.C.
    § 651 ......................................................................................14
    § 659(c) ..................................................................................16

Clean Water Act .............................................................................7

Investment Advisers Act of 1940 ("Advisers Act") ........................*passim*

Occupational Safety and Health Act of 1970 ...............................14

Securities Act of 1933 ......................................................................5

Securities Exchange Act of 1934 ..................................................5, 8

**Secondary Authorities**

Fed. R. App. P.
    R. 29(d) ..................................................................................21
    R. 32(a)(5) ..............................................................................21
    R. 32(a)(6) ..............................................................................21
    R. 32(a)(7)(B) .........................................................................21
    R. 32(f) ...................................................................................21

# TABLE OF AUTHORITIES

**Page**

John Thomas Capital Mgmt. Grp., Initial Decision Release No. 693,
2014 WL 5304908 (ALJ Oct. 17, 2014)..............................................................10

SEC Division of Enforcement Annual Report FY 2020, at 16
https://www.sec.gov/files/enforcement-annual-report-2020.pdf........................17

U.S. Const. art. III ................................................................................................4, 6

## STATEMENT OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 29.2, the undersigned counsel of record for *amici curiae* Phillip Goldstein, Mark Cuban, and Nelson Obus certifies that the following listed persons and entities, in addition to those already listed in the Petitioners' principal brief, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| **Petitioners** | **Counsel for Petitioners** |
|---|---|
| Patriot28, L.L.C. | Karen Cook |
|  | **KAREN COOK, PLLC** |
| George R. Jarkesy, Jr. |  |
|  | S. Michael McColloch |
|  | **McColloch PLLC** |

| **Respondent** | **Counsel for Respondent** |
|---|---|
| U.S. Securities and Exchange Commission | Paul G. Alvarez |
|  | Dominick V. Freda |
|  | **U.S. SECURITIES AND EXCHANGE COMMISSION** |
|  | Daniel J. Aguilar |
|  | **U.S. DEPARTMENT OF JUSTICE** |

| *Amici Curiae* | **Counsel for *Amici Curiae*** |
|---|---|
| Phillip Goldstein | Samuel W. Cooper |
| Mark Cuban | Brian S. Kaewert |
| Nelson Obus | Janice J. Lee |
| | Joseph N. Montoya |
| | Nicolas Morgan |

**Paul Hastings LLP**

*/s/ Samuel W. Cooper*
Samuel W. Cooper

## INTEREST OF THE *AMICI CURIAE*[1]

1.     Patriot28, L.L.C., and George R. Jarkesy, Jr.'s ("Mr. Jarkesy" and, together with Patriot28, L.L.C., "Petitioners") appeal challenges the United States Securities and Exchange Commission's (the "SEC") use of administrative law judges ("ALJs") in enforcement proceedings. *See generally Lucia v. SEC*, <u>138 S. Ct. 2044</u> (2018) (finding that SEC ALJs were unconstitutionally appointed). Unlike defendants in federal court proceedings, respondents in SEC administrative proceedings are not afforded the right to a jury trial or the benefits and protections of the federal rules of evidence and procedure. Instead, when the SEC elects to use an administrative proceeding, whether before an ALJ or the Commissioners of the SEC, the SEC determines a respondent's liability and punishment without the involvement of a jury. Such proceedings disregard the protections guaranteed to litigants by the United States Constitution and lead to unequal and unjust results.

2.     Phillip Goldstein is a sophisticated investor and leading authority in the investment adviser field. Mr. Goldstein has successfully challenged the SEC's overreach of its authority regarding the regulation of private investment funds before the U.S. Court of Appeals in the District of Columbia Circuit. *Goldstein v.*

---

[1] Undersigned counsel for *amici curiae* certify that this brief was not authored in whole or part by counsel for any of the parties; no party or party's counsel contributed money for the brief; and no one other than *amici* and their counsel have contributed money for this brief.

*SEC*, [451 F.3d 873](#) (D.C. Cir. 2006).  Mr. Goldstein has an interest in ensuring that every person subject to an enforcement action by the SEC is afforded the opportunity to argue the case before an Article III judge and a jury of his or her peers.

3.    Mark Cuban is a successful businessman and investor.  In October 2013, a jury in the Northern District of Texas found him not liable for claims brought against him by the SEC.  *See* Court's Charge to the Jury, *SEC v. Cuban*, No. 3:08-cv-02050-D (N.D. Tex. Oct. 16, 2013), ECF No. 278.  Mr. Cuban successfully argued that the SEC was attempting to sanction him based on a defective legal theory and incorrect facts.  As an individual who achieved exoneration before a jury, Mr. Cuban has an interest in supporting Petitioners' appeal in this case and in ensuring that future litigants are not forced into administrative proceedings that both favor the SEC and infringe on individuals' constitutional rights.

4.    Nelson Obus is a prominent hedge-fund manager and has served on the board of directors of a number of public companies.  In 2014, twelve years after originally being accused by the SEC of insider trading, Mr. Obus was found not liable of securities law violations by a jury of his peers.  *See* Jury Verdict Form, *SEC v. Obus*, No. 1:06-CV-3150 (S.D.N.Y. June 2, 2014), ECF No. 163.  After this protracted litigation, Mr. Obus has an interest in ensuring that defendants

in SEC enforcement actions are able to vigorously defend themselves with the full protections granted defendants in federal courts, including the right to a jury trial.

## **INTRODUCTION**

The SEC wants to change the rules of the game as it goes to suit its own interests. Under the SEC's proposed scheme, two individuals could engage in identical conduct, be charged with identical violations of securities laws, and be facing identical punishments, yet the two may receive or be denied the constitutional protections they are entitled to based solely on the SEC's decision of whether to try the case before a federal judge or before its own ALJ. This decision, under the SEC's proposed stratagem, could be made for any reason—or for no reason at all.

That is exactly what has happened here. The SEC has instituted an enforcement action against and issued an opinion on Petitioners' alleged conduct based on purported violations of the Securities Act of 1933, the Exchange Act of 1934, and the Investment Advisers Act of 1940 (the "Advisers Act"), and seeks to impose a monetary penalty and to bar Mr. Jarkesy from acting as a promoter, finder, consultant, or agent for issuance of penny stocks, from serving as an employee, officer, and director of a registered investment company, and from even associating with any broker, dealer, or investment adviser. Yet, despite these serious allegations and the punishments they carry, the SEC has decided to deny

Petitioners the constitutional protections they are entitled to—such as the Seventh Amendment right to a trial by jury in an Article III court—and instead has forced Petitioners to proceed in front of the SEC's own ALJ. The SEC's choice is both unconstitutional and leads to bizarre and unequal results for similarly situated defendants in SEC enforcement actions.

Consider the circumstances of Mr. Jarkesy compared to those of Conrad Seghers. *SEC v. Seghers*, 298 F. App'x 319, 322 (5th Cir. 2008) ("*Seghers*"). They were both investment advisers in Texas. The SEC alleged that both Mr. Jarkesy and Mr. Seghers violated the antifraud provisions of the Advisers Act. The SEC imposed monetary penalties against both of them. And the SEC barred both of them from associating with any investment adviser. *Seghers v. SEC*, 548 F.3d 129 (D.C. Cir. 2008).

However, a critical difference between the two individuals is that the SEC first brought suit against Mr. Seghers in federal court—thus affording him a right to have a jury determine whether he had violated the federal securities laws—and only then did the SEC ask its ALJ to bar him from associating with an investment adviser. But because the SEC elected to bring suit against Petitioners in front of its own ALJ—bypassing federal court altogether—Petitioners will be deprived of their constitutional right to have a jury determine whether they violated the federal securities laws unless this Court intervenes. The same would be true if the SEC

had elected to hold a hearing in front of the Commissioners. No defendant's constitutional right to a jury should be trumped by the whim of a government plaintiff attempting to tip the scales in its favor by unilateral choice of forum.

This Court should ensure that the SEC does not overstep its authority and deny Petitioners' constitutional right to a jury trial.

## ARGUMENT

### I. The Seventh Amendment to the United States Constitution Guarantees SEC Defendants the Right to a Jury

The Seventh Amendment guarantees defendants the right to a jury trial on the merits in those actions that "are analogous to '[s]uits at common law[,]'" like civil enforcement actions. *Tull v. United States*, 481 U.S. 412, 417 (1987). In *Tull*, the seminal case establishing a right to a jury trial in civil enforcement actions, the defendant/petitioner, a real estate developer, was sued by the federal government for purported violations of the Clean Water Act. *Id.* at 414. After denying the defendant's request for a jury trial, the district court found the defendant guilty of violating the Clean Water Act and imposed a monetary penalty. *Id.* at 415, 420. On appeal, the Fourth Circuit affirmed the judgment. *Id.* at 416. The Supreme Court granted certiorari on the question of "whether the Seventh Amendment guaranteed [the defendant] a right to a jury trial on both liability and amount of penalty in an action instituted by the Federal Government seeking civil [monetary] penalties and injunctive relief . . . ." *Id.* at 414 (citation omitted). The Supreme

Court reversed, holding that while the defendant was not entitled to a jury determination of the penalty, he had a "constitutional right to a jury trial to determine his liability on the legal claims." *Id.* at 425. The Court was unanimous on this point. *Id.*; *Id.* at 427 (Scalia, J., concurring in part and dissenting in part).[2]

As Petitioners rightly note,[3] the right to a jury determination of liability for civil penalties has been applied to SEC enforcement actions by several Circuit Courts, including this one. *See SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 781-82 (5th Cir. 2017) (accepting the SEC's position that defendant was entitled to a jury determination of liability for aiding and abetting Securities Exchange Act of 1934 ("Exchange Act") section 13(a) violation); *SEC v. Capital Sols. Monthly Income Fund, LP*, 818 F.3d 346, 354-55 (8th Cir. 2016) (recognizing defendant's right to a jury trial on liability in SEC enforcement action); *SEC v. Lipson*, 278 F.3d 656, 662 (7th Cir. 2002) (holding defendant was entitled to jury determination of liability).

*Seghers* is particularly instructive here. 298 F. App'x at 322. The SEC originally filed suit against Seghers in United States District Court for the Northern

---

[2] The Supreme Court confirmed this holding in *Feltner v. Columbia Pictures Television, Inc.*, stating, "[i]n *Tull*, we held that the Seventh Amendment grants a right to a jury trial on all issues relating to liability for civil penalties . . . ." 523 U.S. 340, 354 (1998).

[3] *See* Petitioners' Brief at 13 ("It is now well settled that the Seventh Amendment right to trial by jury applies to civil actions—for penalties—brought by the SEC to enforce the securities laws.")

District of Texas alleging, among other things, violations of the antifraud provisions of the Advisers Act. Complaint, *SEC v. Seghers*, No. 3:04-CV-1320-K (N.D. Tex. June 16, 2004), ECF No. 1. A jury found Mr. Seghers liable for fraud because he knowingly caused three hedge funds that he founded to overstate the value of investors' interests in those funds. *Seghers,* 298 F. App'x at 323. After the jury found Mr. Seghers liable, the court ordered him to pay disgorgement and imposed a civil monetary penalty against Mr. Seghers and enjoined him from committing further securities law violations. *Id.* Mr. Seghers and the SEC appealed aspects of the results in District Court, including the jury's findings and the Court's rulings on disgorgement. *Id.* at 324. On appeal, this Court found that the SEC had presented sufficient evidence for the jury to find Mr. Seghers liable, and no one —not the SEC, Mr. Seghers, or the 5th Circuit—suggested that the jury was incapable of determining liability, that a jury would be incompatible with the required fact-finding function, or that an SEC administrative law judge would have brought some required level of expertise to bear on such a finding. *Id*. at 330-36. Indeed, based at least in part on the SEC's own arguments, this very Circuit has determined that those charged with violating the federal securities laws have a constitutional right to a jury trial on the issue of liability. *SEC v. Life Partners Holdings*, *Inc.*, 854 F.3d 765 (5th Cir. 2017).

Yet here, the SEC has accused Petitioners of the same conduct it alleged in

*Seghers*—violating the antifraud provisions of the Advisers Act in connection with fund valuation representations—but elected to bring the case in its own administrative proceeding before one of its own ALJs.  In so doing, the SEC denied Petitioners the very same constitutional protection of a right to a jury determination of liability that it conceded was owed to the defendants in *Seghers* and *Life Partners Holdings.  See Life Partners Holdings*, 854 F.3d at 781.  Indeed, if the SEC has its way, Petitioners and those similarly situated will never have the opportunity to argue their case in front of a panel of their peers.  *John Thomas Capital Mgmt. Grp.*, Initial Decision Release No. 693, 2014 WL 5304908, at *6 (ALJ Oct. 17, 2014) (finding that assigning the fact-finding and initial adjudication to a jury would be "incompatible" with administrative process) (citation omitted). This is not a just—or constitutional—result.

## II.    The SEC's Forum Shopping Leads to Unconstitutionally Unequal Protection

Under the scheme the SEC would have this Court bless, the prosecutor in civil enforcement actions—in this case, the Commission—would have complete discretion to choose to pursue two identical defendants in such disparate ways that one defendant would receive constitutional protections and the other would not. Indeed, just as Petitioners suggest, such unfettered discretion will result in disfavored forum shopping, unequal application of the law, and implicate equal

protection concerns.[4]

On a foundational level, the SEC's current scheme violates the Equal Protection Clause because it infringes on the fundamental right to a jury trial. *See Daniel Int'l Corp. v. Fischbach & Moore, Inc.,* 916 F.2d 1061, 1064 (5th Cir. 1990) ("[T]he seventh amendment confers a fundamental right."); *see also Standard Oil Co. of Cal. v. Arizona,* 738 F.2d 1021, 1023 (9th Cir. 1984) ("Our review is guided by the axiom that the right of jury trial in civil cases is a basic, fundamental right, and that 'any seeming curtailment of the right to jury trial should be scrutinized with the utmost care.'") (citation omitted). A violation of a fundamental right is subject to strict scrutiny review. *See Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312 (1976) (per curiam). Accordingly, the Court must review whether the SEC's proposed decisional choice is narrowly tailored to serve a compelling governmental interest. *See generally Johnson v. California,* 543 U.S. 499, 505 (2005) (strict scrutiny review of racial classifications requires government to show classifications are narrowly tailored to serve compelling governmental interests). The SEC cannot meet this burden.

The SEC's current use of ALJs raises an additional Equal Protection issue: the unequal treatment of litigants before the SEC. Courts have long voiced

---

[4] *See* Petitioners' Brief at 41-46.

concerns over both private litigants' and the government's use of impermissible forum shopping.[5]  While it is not atypical—or even necessarily impermissible—for a party to seek a forum it believes may be more sympathetic, when a government agency unilaterally selects a forum that deprives—with no rational basis—a defendant of constitutional protections afforded to other similarly situated defendants, such disparate outcomes are not permissible under the Equal Protection Clause of the Constitution.  *See Gupta v. SEC*, 796 F. Supp. 2d 503, 513-14 (S.D.N.Y. 2011) (denying SEC's motion to dismiss Equal Protection challenge to SEC administrative proceeding).[6]

In *Gupta*, the SEC brought an administrative proceeding against one individual despite having filed federal court actions against other individuals and entities based on related allegations.  In denying the SEC's motion to dismiss Gupta's complaint challenging the administrative proceedings on Equal Protection grounds, the court observed, "[a] funny thing happened on the way to this forum.

---

[5] *See, e.g.*, *Commodity Futures Trading Comm'n v. First Nat'l Monetary Corp.*, 565 F. Supp. 30, 33 (N.D. Ill. 1983) (noting that the government should be held to the same standard as private litigants and should not be allowed to choose a forum based merely on its convenience).

[6] While the Supreme Court has noted that discretionary decisions by agencies regarding similarly situated individuals do not inherently violate the Equal Protection Clause, *see Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601-02 (2008), where, as here, there is "no rational basis for the difference in treatment," such decisions violate the Equal Protection Clause. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).

On March 1, 2011, the Securities and Exchange Commission . . . decided it preferred its home turf." *Gupta*, 796 F. Supp. 2d at 506. The court further noted that the complaint "alleges that the SEC intentionally, irrationally, and illegally singled Gupta out for unequal treatment" and that "[t]hese allegations . . . would state a claim even if Gupta were entirely guilty of the charges made against him . . . [and] even if the SEC were acting within its discretion when it imposed disparate treatment on Gupta, that would not necessarily exculpate it from a claim of unequal protection if the unequal treatment was still arbitrary and irrational." *Gupta*, 796 F. Supp. 2d at 513 (citing *Olech*, 528 U.S. at 564–66).

The court denied the SEC's motion to dismiss Gupta's Equal Protection claim, finding that "the selective prosecution/equal protection claim will turn entirely on extrinsic evidence of whether the SEC's decision to treat Gupta differently from the other Galleon-related defendants was irrational, arbitrary, and discriminatory." *Gupta*, 796 F. Supp. 2d at 514. The SEC would have to overcome the fact that Gupta was "being treated substantially disparately from 28 essentially identical defendants, with not even a hint from the SEC, even in their instant papers, as to why this should be so." *Id*.

As was the situation in *Gupta*, so it is here regarding Petitioners. Forum shopping by itself may not be impermissible. But forum shopping by the federal government to pursue the same claims and penalties against similarly situated

individuals so that one individual has access to a jury and the other does not violates the Equal Protection Clause of the Constitution.

### III. Congress Has Not Assigned the SEC a Function Incompatible with the Seventh Amendment Right to a Jury

Even if the Constitution permitted the SEC to bypass a defendant's Seventh Amendment rights—which it does not—Congress has not determined that SEC administrative proceedings require fact-finding activities incompatible with the Seventh Amendment right to a jury trial and therefore mandated that the SEC pursue federal securities law liability determinations in administrative proceedings. Accordingly, SEC administrative proceedings are not like those addressed by the Supreme Court decision in *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442 (1977).

In *Atlas Roofing*, the Supreme Court took up the question of whether Congress was empowered to create a cause of action by statute that included civil penalties enforceable in an administrative agency where there is no jury trial. 430 U.S. at 444. The petitioners in *Atlas Roofing* were cited for violations of the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 651 *et seq.*, which specifically provided that all appeals of citations were to be made to the Secretary of Labor and then heard by an administrative law judge. 430 U.S. at 445-46. Petitioners contested these citations and, per statute, were afforded hearings before ALJs, who affirmed the citations. *Id.* at 447-48. After the Fifth

-14-

Circuit affirmed, the Supreme Court took up the case and found that the Seventh Amendment "does not prohibit <u>Congress</u> from assigning the factfinding function . . . to an administrative forum with which the jury would be incompatible" and that where the function of deciding whether a violation of a statutory obligation has occurred has been "committed <u>exclusively</u> to an administrative agency . . ." the statutory scheme survives Seventh Amendment scrutiny. *Id*. at 450 (emphases added).

But that is not the case here. Congress did not "exclusively" commit the fact-finding function in SEC enforcement actions seeking monetary penalties to an administrative agency. Quite the contrary: the SEC is permitted—if not explicitly obligated—to bring such actions either in the district courts of the United States or in State or Territorial courts (and not in front of the Commission). *See* Advisers Act, <u>15 U. S. C. §80b-14(a)</u> ("The district courts of the United States . . . shall have jurisdiction of violations of [the Advisers Act] or the rules, regulations, and orders thereunder, and, concurrently with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin of [the Advisers Act] . . . ."). Beyond that grant of federal court jurisdiction, the SEC has statutory discretion to bring enforcement actions seeking money penalties in federal court. *See* Advisers Act, <u>15 U.S.C. § 80b-9(e)(1)</u> ("Whenever it shall appear to the Commission that any person has violated any provision of this

subchapter . . . the Commission may bring an action in a United States district court to seek, and the court shall have jurisdiction to impose, upon a proper showing, a civil penalty to be paid by the person who committed such violation.").[7] In short, and as the SEC itself has acknowledged by bringing enforcement actions such as *Seghers* and *Life Partners Holdings* in federal court, there is nothing about the sorts of claims presented against Petitioners that requires an ALJ, or the Commissioners, to conduct specialized fact-findings or make determinations of liability. *Seghers*, 298 F. App'x at 322; *Life Partners Holdings*, 854 F.3d at 781-82. Thus, the holding of *Atlas Roofing* does not provide the SEC with legal authority to deprive Petitioners of their constitutional right to a jury determination of whether they violated the Advisers Act.

## IV.   The SEC Regularly Employs a Constitutional Method For Federal Securities Law Liability Determinations

To be sure, Congress has authorized the SEC both to impose civil penalties and to bar individuals from association with an investment adviser, broker, dealer, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization. *See* 15 U.S.C. § 80b-9(e)(1) and

---

[7] By contrast, the statute at issue in *Atlas Roofing* provided that where a citation was contested, the Occupational Safety and Health Review "Commission shall afford an opportunity for a hearing" and "shall thereafter issue an order, based on findings of fact, affirming, modifying, or vacating . . ." the citation. 29 U.S.C. § 659(c).

[15 U.S.C. § 80b-3(f)](#).  However, nothing in either statute requires the Commission to impose such punishments prior to a federal court determination of liability, and, in fact, the SEC regularly imposes punishments administratively after liability has been determined in federal court.

The SEC itself refers to these oft-employed proceedings as "follow-on administrative proceedings" ("Follow-on APs").  In its most recent annual report, the SEC's Division of Enforcement noted that in FY 2020 alone the SEC brought one hundred eighty (180) "'follow-on' proceedings seeking bars based on the outcome of Commission actions or actions by criminal authorities or other regulators . . . ."  (SEC Division of Enforcement Annual Report FY 2020, at 16 https://www.sec.gov/files/enforcement-annual-report-2020.pdf.).[8]

The case against Seghers discussed above is a representative example of a Follow-on AP.  The SEC first sued Mr. Seghers in federal court, affording him constitutional protections and giving him the opportunity to have liability determined by a jury, and the "jury returned a verdict against Seghers on the SEC's claims that he had violated the anti-fraud provisions." *Seghers v. SEC*, [548 F.3d 129, 131](#) (D.C. Cir. 2008).  Following entry of judgment in the federal court case,

---

[8] The SEC brought 210 follow-on proceedings each year for the previous two years.  The SEC still brought 180 follow-on proceedings this year even though the total number of cases was down 17% from the previous year.  SEC Division of Enforcement Annual Report FY 2020 at 16, https://www.sec.gov/files/enforcement-annual-report-2020.pdf.

the SEC instituted an administrative proceeding, and "the ALJ granted the Division's motion for summary disposition, permanently barring Seghers from associating with any investment advisor and the SEC thereafter upheld the ALJ's action." *Id.* at 132 (citation omitted). As demonstrated in the *Seghers* case, the SEC's widespread practice of using Follow-on APs to impose penalties after the conclusion of a federal court action may in fact *reduce* the SEC's administrative burden because the SEC often uses the federal court findings to resolve the Follow-on APs by summary disposition without hearing.

This very common sequencing by the SEC—liability established in federal court with remedies imposed in a Follow-on AP—both protects defendants' constitutional rights and allows the SEC to engage in its mission without undue burden. Sequencing liability and remedies determinations in a constitutional manner is neither untested nor burdensome.

## <u>CONCLUSION</u>

For the reasons set forth herein, the Court should find that an administrative hearing to determine Petitioners' liability for alleged securities law violations without providing them with access to a jury in federal court would violate Petitioners' Seventh Amendment and Equal Protection rights and should not be permitted.

Dated: March 17, 2021

Respectfully submitted,

*/s/ Samuel W. Cooper*
Samuel W. Cooper
**PAUL HASTINGS LLP**
600 Travis Street
Fifty-Eighth Floor
Houston, TX 77002
(713) 860-7305

Nicolas Morgan
Janice J. Lee
Brian S. Kaewert
Joseph N. Montoya
**PAUL HASTINGS LLP**
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071
(213) 683-6181

*Counsel for Phillip Goldstein,
Mark Cuban, and Nelson Obus*

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2021, I caused the foregoing Brief to be electronically filed with the Clerk of Court using the CM/ECF filing system, which will send notice of such filing to all registered CM/ECF users.

*/s/ Samuel W. Cooper*
Samuel W. Cooper

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App.

P. 32(a)(7)(B) and 29(d) because it contains 4255 words according to Microsoft

Word, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it is

in Times New Roman 14-point font.


 March 17, 2021                          */s/ Samuel W. Cooper*
                                          Samuel W. Cooper