No. 20-61007

GEORGE R. JARKESY, JR. AND PATRIOT28, L.L.C.,
Petitioners,

v.

SECURITIES & EXCHANGE COMMISSION,
Respondent.

On Petition for Review of an Order of the Securities and
Exchange Commission

# OPPOSITION TO
# PETITION FOR REHEARING EN BANC

S. MICHAEL MCCOLLOCH, PLLC
**S. Michael McColloch**
E-mail: smm@mccolloch-law.com
Phone: 214.643.6055
KAREN COOK, PLLC
**Karen L. Cook**
E-mail: karen@karencooklaw.com
Phone: 214.643.6054
6060 N. Central Expressway, Suite 500
Dallas, Texas 75206
Fax: 214.295.9556

Attorneys for Petitioners

# CERTIFICATE OF INTERESTED PERSONS

No. 20-61007

GEORGE R. JARKESY, JR., PATRIOT28, L.L.C.,
Petitioners,
v.
SECURITIES AND EXCHANGE COMMISSION,
Respondent.

The undersigned counsel of record certifies that the following listed persons
and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in
the outcome of this case. These representations are made in order that the judges of
this court may evaluate possible disqualification or recusal.

| | |
|---|---|
| Petitioner/Appellants: | George R. Jarkesy, Jr.<br>Patriot28, LLC |
| Counsel for Appellants: | S. Michael McColloch<br>Karen Cook |
| Respondent/Appellee: | Securities and Exchange Commission |
| Counsel for Respondent/<br>Appellee: | Daniel J. Aguilar, Department of Justice<br>Paul G. Alvarez, SEC<br>Dominick V. Freda, SEC |
| Intervenors: | None at this time. |
| *Amici*: | None at this time. |

*/s/ S. Michael McColloch*
S. Michael McColloch
Attorney of Record for Petitioners

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons ................................................................. i

Table of Contents ...................................................................................... ii

Table of Authorities ................................................................................. iii

INTRODUCTION ........................................................................................... 1

THE SEVENTH AMENDMENT: THE PANEL FOLLOWED CURRENT
PRECEDENT IN HOLDING THAT SECURITIES FRAUD CLAIMS ARE NOT
"PUBLIC RIGHTS" CASES ............................................................................. 3

THE PANEL CORRECTLY APPLIED THE NONDELEGATION DOCTRINE BECAUSE
§929(A) DELEGATED UNFETTERED LEGISLATIVE POWER TO THE SEC .................... 11

THE PANEL WAS REQUIRED BY PRECEDENT TO INVALIDATE THE STATUTORY
SCHEME INSULATING SEC ALJS IN VIOLATION OF U.S. CONST. ART. II, §3 ............ 13

CONCLUSION ............................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566 (5th Cir. 2015)............................. 14

*Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*,
    430 U.S. 442, 97 S. Ct. 1261, 51 L. Ed. 2d 464 (1977).........................*passim*

*Crowell v. Benson*, 285 U.S. 22, 52 S. Ct. 285,
    76 L. Ed. 598 (1932).................................................................... 12

*Decker Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021) ............................14-15

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477,
    130 S. Ct. 3138, 177 L. Ed. 2d 706 (2010)............................................. 10, 13

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S. Ct. 2782, 106
    L. Ed. 2d 26 (1989)....................................................................*passim*

*Jarkesy v. SEC*, 48 F. Supp. 3d 32 (2014), *aff'd*, 803 F.3d 9
    (D.C. Cir. 2015) ........................................................................ 11

*Mistretta v. United States*, 488 U.S. 361, 109 S. Ct. 647, 102
    L. Ed. 2d 714 (1989).................................................................... 11

*N. Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S.
    50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982)................................................. 9

*Oceanic Steam Nav. Co. v. Stranahan*, 214 U.S. 320, 29 S. Ct. 671,
    53 L. Ed. 1013 (1909).................................................................. 12

*Stern v. Marshall*, 564 U.S. 462, 131 S. Ct. 2594, 180
    L. Ed. 2d 475 (2011).................................................................... 9

*Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 105 S. Ct. 3325,
    87 L. Ed. 2d 409 (1985).................................................................8-9

*United States v. Batchelder*, 442 U.S. 114, 99 S. Ct. 2198,
    60 L. Ed. 2d 755 (1979).................................................................. 12

# TABLE OF AUTHORITIES, CONT'D

**Cases Cont'd**                                                                    **Page**

*United States v. ERR, LLC,* 35 F. 4th 405, 411 (5th Cir. 2022) ............................ 7-8

*Whitney Nat'l Bank in Jefferson Parish v. Bank of New Orleans & Trust*
    *Co.,* 379 U.S. 411, 85 S. Ct. 551, 13 L. Ed. 2d 386 (1965) .......................... 10


**Constitution & Statutes**

U.S. CONST. art. I ................................................................................................. 11

Dodd-Frank Wall Street Reform and Consumer Act, Pub. L. No. 111-203,
    124 Stat. 1376 (2010) (codified as amended throughout Title 15,
    U.S.C.) ............................................................................................... *passim*


**Rules & Regulations**

FED. RULES. APP. PROC. 28(d) .................................................................................. 1


**Other Sources**

An Old Whig III, *Philadelphia Independent Gazetteer* (Oct. 20, 1787),
    in 13 THE DOCUMENTARY HISTORY OF THE RATIFICATION OF THE
    CONSTITUTION, 425, 426-27 (John P. Kaminski et. al eds. 2009) ................. 5

Charles Wolfram, *The Constitutional History of the Seventh Amend-*
    *ment*, 57 MINN. L. REV. 639 (1973) ................................................................. 5

Jenna Greene, *The SEC's on a Long Winning Streak*, NAT'L
    L.J., Jan. 22, 2015 ....................................................................................... 1

# TABLE OF AUTHORITIES, CONT'D

**Other Sources, Cont'd**                                                    **Page**

John Adams, Draft of Argument in *Sewall v. Hancock*, *in* 2 LEGAL
  PAPERS OF JOHN ADAMS 194, 207 (L. Kinvin Wroth & Hiller
  B. Zobel eds. 1965)........................................................................5

John Adams, The Bill of Rights; A List of Grievances (Oct. 14, 1774),
  *in* 2 THE ADAMS PAPERS 159, 159-63 (Robert J. Taylor ed.,1977) ...............5

John Jay, Address to the People of Great Britain, Philadelphia (Oct.
  21, 1774), *in* 1 THE SELECTED PAPERS OF JOHN JAY 1760–
  1779 100, 100–107 (Elizabeth M. Nuxoll ed. 2010) ......................................5

Kenneth Klein, *The Validity of The Public Rights Doctrine in Light*
  *of the Historical Rationale of the Seventh Amendment*, 21
  HASTINGS CONST. L.Q. 1013 (1994) ..............................................................4

Letter from George Washington to Bryan Fairfax (Jul. 4, 1774), *in* 10 THE
  PAPERS OF GEORGE WASHINGTON: COLONIAL SERIES 109, 109-110
  (W.W. Abbot & Dorothy Twohig eds., 1995)................................................5

M. Redish and D. LaFave, *Seventh Amendment Right to Jury Trial in*
  *Non- Article III Proceedings: A Study in Dysfunctional*
  *Constitutional Theory*, 4 WM. & MARY BILL RTS. J. 407 (1995) ...................4

Nicolas Berg *et al.*, *SEC's Continued Use of Administrative Forum Irks*
  *Critics, Raises Sticky Constitutional Questions*, CORP. L. &
  ACCOUNTABILITY REP., Dec. 19, 2014 ...........................................................4

Securities and Exchange Commission, ALJ Initial Decisions, available at
  https://www.sec.gov/ alj/aljdec.htm, last visited March 9, 2021....................7

# INTRODUCTION

The panel opinion ("Op.") faithfully applied current Supreme Court precedent under the unique circumstances of this case and the precise challenges raised by Petitioners George Jarkesy and Patriot28 LLC.[1] The nature of those challenges—and the resultant holdings by the panel—have now been recast by the SEC to avoid the inevitable consequence of the unconstitutional expansion of its power afforded by Dodd-Frank §929P(a).

That unprecedented legislation vested the SEC with unreviewable authority to try "any person" in its in-house "courts" without a jury, for any claim under the antifraud provisions of the securities laws. For the first time, the SEC was vested with the discretion to unilaterally strip an enforcement target of Article III and Seventh Amendment rights—exercising a power constitutionally reserved only to Congress. Embracing this gift with vigor, the SEC soon racked up a 100% win rate in its home courts, while posting a modest 61% record in federal court, where juries are employed.[2]

---

[1] Pursuant to FED. R. APP. PRO. 28(d), the two petitioners before the panel are referred to herein as the singular "Jarkesy."

[2] *See* Nicolas Berg et al., *SEC's Continued Use of Administrative Forum Irks Critics, Raises Sticky Constitutional Questions*, CORP. L. & ACCOUNTABILITY REP., Dec. 19, 2014, at 1722; Jenna Greene, *The SEC's on a Long Winning Streak*, NAT'L L.J., Jan. 22, 2015.

The SEC is taking the position that the Seventh Amendment never applies to common law claims added to statutes where the government is the plaintiff. It is not overstatement to say that his would shock the consciences of the Founders, who framed the Seventh Amendment primarily to prevent *that very scenario*. It also flouts current Supreme Court jurisprudence. In its Petition the SEC omits to mention that the old, mechanical *Atlas Roofing* formulation—its primary rationale for dispensing with the Seventh Amendment—has been long since abrogated, even the decision's author having later admitted that it had been "overruled."

Likewise, the SEC complains of the panel's application of the nondelegation doctrine without the barest mention of Supreme Court precedent expressly defining the power to assign claims to non-Article III forum as core *legislative* power, while also ignoring the SEC's express admission before the panel that Congress provided no "intelligible principle" to regulate the exercise of that power. Finally, the SEC complains of the panel's holding that the agency's ALJ's enjoy multiple layers of tenure protection in violation of Art. II, § 3, without noting in its Petition that it effectively confessed error on this very issue in briefing before the Supreme Court in 2018.

When the strawmen are cleared away and the specific issues that were actually resolved by the panel are correctly identified, the panel's conclusions are unremarkable—the logical and inescapable result of binding precedent to confront a

unique statutory scheme which tramples on the separation of powers and the fundamental rights of citizens.

### THE SEVENTH AMENDMENT: THE PANEL FOLLOWED CURRENT PRECEDENT IN HOLDING THAT SECURITIES FRAUD CLAIMS ARE NOT "PUBLIC RIGHTS" CASES

Throughout the proceedings below and in this Court the SEC has placed talismanic reliance on *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, a much-criticized case that has been overtaken by subsequent authority. 430 U.S. 442 (1977). Its own author, Justice Byron White, lamented a decade later that the Supreme Court had by then "overrul[ed] or severely limit[ed] the relevant portions" of the decision.[3] But the assignment of Jarkesy's case to a jury-less administrative tribunal would have failed even the *Atlas Roofing* test.

The OSHA regulatory claims at issue in *Atlas Roofing* were brand new causes of action based on detailed legal standards that had *never existed before* and required the application of industry expertise in workplace safety for effective enforcement.[4] The *Atlas Roofing* Court—for the first time—took the "public rights" doctrine, a judicial construct that was devised solely for assessment of the contours of Article III jurisdiction, and imported it into Seventh Amendment analysis.[5]

---

[3]  *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 71 (1989) (White, J., dissenting).

[4]  430 U.S. at 444.

[5]  Application of the "public rights" doctrine to eliminate Seventh Amendment rights, where the government is prosecuting a claim against a citizen, is inimical to the very purpose of the jury trial

The SEC cites several out-of-context quotes from *Granfinanciera, S.A. v. Nordberg*, mostly reciting language from *Atlas Roofing*, as the sole support for its claim that the panel majority's analysis is "incompatible" with Supreme Court precedent. 492 U.S. at 52; Petition at 9-10. This false conclusion leads the SEC to insist that Congress may take any traditional common law cause of action which may be asserted by the government against a citizen in a real Article III court and supplant that claim with an "analogous" cause of action to be adjudicated only in an agency forum, where the Seventh Amendment conveniently disappears. Petition at 5-9.

The SEC's position would eviscerate—or allow Congress to eviscerate at will—the core value underlying the Seventh Amendment. <u>The main purpose of the Seventh Amendment was to preclude the government from pursuing civil penalties for common law claims against citizens in non-Article III forums without juries</u>.[6]

_____

right—meant to act as a citizen safeguard against government tyranny. For this reason this application has been roundly criticized, and the Court has steadily distanced itself from *Atlas Roofing*. *See, e.g.*, M. Redish and D. LaFave, *Seventh Amendment Right to Jury Trial in Non-Article III Proceedings: A Study in Dysfunctional Constitutional Theory*, 4 WM. & MARY BILL RTS. J. 407, 411 (1995); Kenneth Klein, *The Validity of The Public Rights Doctrine in Light of the Historical Rationale of the Seventh Amendment*, 21 HASTINGS CONST. L.Q. 1013, 1047 n.13 (1994) ("antithetical to the Seventh Amendment to read into it an exception for government-supervised dispute resolution").

[6] Archives documenting the complaints driving revolutionary fervor in the 1770's and fueling anti-federalist sentiment in the late 1780's are replete with outrage focused mostly on the British practice of creating statutory penalties in lieu of criminal sanctions to justify trials in vice-admiralty courts and other forums without juries. Just before the revolution, George Washington expressed fury at the British use of these jury-less "courts" to extract civil penalties against colonists, and other Framers from John Jay to John Adams wrote at length complaining about the

Yet this is precisely what the SEC and the panel dissent would sanction, much to the horror of the founding generation, its leaders having cobbled together a sufficient coalition of states to ratify the Constitution *only* because of the assurance that the jury trial right would be imbedded in a new bill of rights and prevent the government from doing exactly what Congress did in Dodd-Frank §929P(a).[7]

What the SEC's Petition left out of its inventive portrayal of *Granfinanciera* was the *holding* of that case—that "Congress cannot convert any sort of action into a 'public right' simply by finding a public purpose for it and codifying it in federal statutory law." Op. at 14. In the *Granfinanciera* Court's own words,

---

need to secure the ancient right of trial by jury to prevent the tyranny of British judges inflicting severe "civil penalties" against colonists in disregard of jury trial rights. *See, e.g.*, Letter from George Washington to Bryan Fairfax (Jul. 4, 1774), *in* 10 THE PAPERS OF GEORGE WASHINGTON: COLONIAL SERIES 109, 109-110 (W.W. Abbot & Dorothy Twohig eds., 1995); John Adams, Draft of Argument in *Sewall v. Hancock*, *in* 2 LEGAL PAPERS OF JOHN ADAMS 194, 207 (L. Kinvin Wroth & Hiller B. Zobel eds. 1965); John Adams, The Bill of Rights; A List of Grievances (Oct. 14, 1774), *in* 2 THE ADAMS PAPERS 159, 159-63 (Robert Taylor ed.,1977); John Jay, Address to the People of Great Britain, Philadelphia (Oct. 21, 1774), *in* 1 THE SELECTED PAPERS OF JOHN JAY 1760–1779 100, 100–107 (Elizabeth M. Nuxoll ed. 2010); *see also,* An Old Whig III, *Philadelphia Independent Gazetteer* (Oct. 20, 1787), in 13 THE DOCUMENTARY HISTORY OF THE RATIFICATION OF THE CONSTITUTION, 425, 426-27 (John P. Kaminski et. al eds. 2009).

[7] It was only the Federalists' agreement to pass a bill of rights for ratification at the first session of Congress specifically containing a civil jury trial right that convinced the recalcitrant states to approve the Constitution. See Charles Wolfram, *The Constitutional History of the Seventh Amendment*, 57 MINN. L. REV. 639, 725 (1973).

Perhaps the only thing the Federalists and Anti-Federalists agreed upon was the necessity of juries for adjudication of common law claims, especially where those claims were prosecuted by the government. The Federalists differed only in their belief that the right was so fundamental that it was unnecessary to spell it out—deeming it inconceivable that Congress would ever strip it away for common law penalty claims, as their British overlords had done. The Anti-Federalists had it right, except for their belief that the adoption of the Seventh Amendment would stop the likes of §929P(a).

> Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency or a specialized court of equity.

492 U.S. at 61.  The *Granfinanciera* Court severely limited the reach of *Atlas Roofing* to the distinct circumstances that justified Congress' decision to assign particular classes of cases to non-jury Article I proceedings, redefining when the application of the "public rights" doctrine can be used to effectively eliminate the Seventh Amendment right.  It struck down the Article I assignment there because Congress had not "created a new cause of action, and remedies therefor, unknown to the common law, because traditional rights and remedies were inadequate to cope with a manifest public problem." *Id.*  Section 929P(a) suffers from those very infirmities.

The *Granfinanciera* Court effectively appended three additional elements to the test for "public rights" and Article III/Seventh Amendment compliance, requisites also ignored by the SEC because they are also fatal to its attack on the panel opinion.  First, that the assignment of a new statutory claim to a jury-less administrative proceeding presumptively violates the Seventh Amendment unless allowing jury consideration would "go far to dismantle the statutory scheme." 492 U.S. at 61.  Second, the Seventh Amendment applies unless the use of real Article III courts would "impede swift resolution" of the claims litigated under the statutory scheme.  492 U.S. at 63.  Finally, a legislative consignment of claims to an Article I forum is

entitled to a degree of deference only if there is evidence that Congress "has given careful consideration to the constitutionality of" the legislative assignment. 492 U.S. at 61.[8]

As the panel opinion explains, continuing to allow jury consideration of securities fraud claims would not "dismantle" anything, Op. at 12-13, demonstrated conclusively by the fact that nearly all such SEC claims in recent years are litigated in real, Article III courts where the Seventh Amendment is still alive and well.[9] And federal court litigation would hardly "impede swift resolution" of such claims, considering the Byzantine course of SEC administrative proceedings: it took *nine years* for the SEC to adjudicate its case against Jarkesy,[10] far longer than it would have taken a district court to dispose of the case. These are concrete reasons—which the SEC does not dispute or even address—that utterly disqualify these claims as "public rights" as defined by *Granfinanciera*.

The Petition likewise does not address another decision issued by this Court

---

[8] There is no evidence in the congressional record that Congress considered the constitutionality of what became §929P(a) when it passed Dodd-Frank in 2010.

[9] Although the number of cases diverted to the SEC's home courts skyrocketed once it obtained administrative penalty authority against "any person" through Dodd-Frank, the SEC's own published database reflects that, from 2017 to 2020, the home courts only hosted an average of 2.5 "trials" of securities fraud cases per year among its ALJs combined. *See* Securities and Exchange Commission, ALJ Initial Decisions, available at https://www.sec.gov/ alj/aljdec.htm, last visited March 9, 2021.

[10] The SEC's investigative phase commenced in 2011. The Commission's Final Order was not issued until 2020. Record on Appeal, at 44.

eight days after this one—*United States v. ERR, LLC*, 35 F.4th 405, 411 (5th Cir. 2022). In ERR a unanimous panel followed *Granfinanciera* to hold that a claim by the federal government for legal restitution for oil spill clean-up costs under the Oil Pollution Act required a jury under the Seventh Amendment. *Id*. at 414. This was because the statutory claim "mimics" common law tort claims and because it was legal, not equitable, in nature. Under *Granfinanciera*, this Court explained, the type of remedy (legal vs. equitable) is the "more important" factor for Seventh Amendment analysis. *Id*. at 412. A legal claim *pursued by the government* that mimics an old common law claim entitles the defendant to a jury trial.

*Granfinanciera* established that the Seventh Amendment does not evaporate just because Congress assigns such government claims against private parties exclusively to an Article I forum, the Court repudiating *Atlas Roofing's* apparent holding to the contrary. Other cases have similarly limited *Atlas Roofing's* mechanistic formulation of the "public rights" doctrine, almost to oblivion. For example, in *Thomas v. Union Carbide Agricultural Products Co*., the Court dismissed the *Atlas Roofing* notion "that Article III has no force simply because a dispute is between the Government and an individual." 473 U.S. 568, 586 (1985). In doing so, the Court eschewed resort to *Atlas Roofing's* "formalistic" analysis of "public rights," redirecting the inquiry for assessing the validity of assignments to administrative courts to "the origin of the right at issue or the concerns guiding the selection

by Congress of a particular method for resolving disputes," *id*., all to determine whether the claims are truly new legislative concoctions or instead fall "within the range of matters reserved to Article III courts." 473 U.S. at 587.[11]

To the extent that the doctrine remains viable in the Seventh Amendment context, the panel majority's analysis was dictated by the current iteration of that doctrine—that a longstanding common law claim inserted into a statue that is not "new" or "novel" and does not require technical esoteric agency adjudication does not qualify as a "public right" permitting Congress to strip away citizens' rights under Article III and their concomitant Seventh Amendment rights.

The panel opinion correctly notes that the dissent was unable to otherwise "define a 'public right' without using the term itself in the definition." Op. at 15. Justice White—the *Atlas Roofing* author—would agree with the panel, eventually acknowledging that the "mystifying" concept was essentially a "tautology."[12] The illogic of the SEC's position is further underscored by the unique "dual jurisdiction" afforded by §929P(a), allowing the agency to pick and choose for itself, on a case-by-case basis, whether its claims are public rights or not. Where the same class of claims can be simultaneously litigated in *both* Article III courts *and* the agency's in-

---

[11]   See also, *N. Pipeline Constr. Co. v. Marathon Pipe Line Co*., 458 U.S. 50 (1982); *CFTC v. Schor*, 478 U.S. 833 (1986); and *Stern v. Marshall*, 564 U.S. 462 (2011).

[12]   *Northern Pipeline*, *supra*, 458 U.S. at 111 (White, J., dissenting).

house courts, the arrangement crashes headlong into the Supreme Court's consistent requirement that any attempted agency assignment by Congress be "exclusive." When Congress "creates procedures 'designed to permit agency expertise to be brought to bear on particular problems,' those procedures 'are to be exclusive.'" *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010); *Whitney Nat'l Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.,* 379 U.S. 411, 418 (1965). This requirement is recited uniformly and was highlighted even back in *Atlas Roofing*, where the Court sanctioned assignments of OSHA cases to agency forums for adjudication without a jury in material part because they were "committed exclusively" to those tribunals. 430 U.S. at 450. It is telling that neither the SEC nor the dissent mention any of these holdings requiring an agency-court designation to be "exclusive."

Claims under the antifraud provisions of the securities laws cannot be "public rights" when the SEC wants them to be and then magically convert into "private rights" when the agency decides, on its own, to take a case to federal court.

Section 929P(a) runs afoul of the exclusivity requirement, the contemporary precedent defining the limits of claim adjudication outside of Article III, and even the requisites set forth in the old *Atlas Roofing* test. The panel opinion followed all of this precedent in concluding that the types of securities fraud claims against Jarkesy could not be tried outside of Article III without a jury.

## THE PANEL CORRECTLY APPLIED THE NONDELEGATION DOCTRINE BECAUSE §929P(a) DELEGATED UNFETTERED LEGISLATIVE POWER TO THE SEC

The Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. CONST. art. I, §1. Congress may not transfer that legislative authority to another branch without providing guidelines or, at minimum, an "intelligible principle" to govern the other branch's exercise of that power.[13] That is the nondelegation doctrine in a nutshell.

Dodd-Frank §929P(a) uniquely vested the SEC with the unilateral and unreviewable power to eschew Article III and assign cases to its own administrative courts—an authority reserved only to Congress—and provided no "intelligible principle" to regulate those assignments. This cannot be squared with the nondelegation doctrine, and the panel majority's straightforward analysis said just that.

Significantly, the SEC conceded in the proceedings below and before the panel that Congress provided it with no "intelligible principle."[14] This left the SEC—and the dissent—with only the argument that the classification of claims for

---

[13] *See, e.g.*, *Mistretta v. United States*, 488 U.S. 361, 372 (1989), and cases collected in the panel opinion, Op. at 21-22.

[14] The agency admitted on the record during pre-hearing collateral litigation before a district court in D.C. in 2014, *Jarkesy v. SEC*, 48 F. Supp. 3d 32 (2014), *aff'd*, 803 F.3d 9 (D.C. Cir. 2015), that Congress "did not provide any criteria" and that the agency-court assignment had been "entirely left to the Commission's discretion," *see* Record on Appeal, at App. 134-35, discretion exercised in "most cases" by the *Division of Enforcement*—the prosecuting branch of the agency. *Id*. at 67. The SEC also conceded the point during oral argument before the panel. Oral Argument at 27:15, https://www.ca5.uscourts.gov/ OralArgRecordings/ 20/20-61007_10-6-2021.mp3.

adjudication outside of Article III constitutes the exercise of *executive* power, not legislative authority.  But that proposition cannot be reconciled with Supreme Court holdings directly to the contrary, and in any event cannot withstand logical scrutiny.

As cited by the panel majority, the Court has long held that "the power to assign disputes to agency adjudication is 'peculiarly within the authority of the legislative department.'"  Op. at 22-23, quoting *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909).  The Court has stated pointedly that "the mode of determining" the assignment of cases to administrative tribunals "is completely within congressional control."  *Crowell v Benson*, 285 U.S. 22, 50 (1932) (quoted with approval in *Atlas Roofing*, 430 U.S. at 452).

These pronouncements nail the lid shut on the nondelegation violation.  But the SEC ignores these holdings—as it must—instead diverting to criminal law to embrace the notion of "prosecutorial discretion," placing all of their chips on *United States v. Batchelder*, 442 U.S. 114 (1979), and other cases affirming the executive authority of prosecutors to decide how and where to initiate criminal prosecutions.  At best, this mixes apples and oranges: criminal prosecutors do not have executive discretion to nullify Article III jurisdiction and strip a fundamental constitutional right from an accused.   As the panel majority properly notes, the SEC's "prosecutorial discretion" comparison "reflects a misunderstanding of the nature of the delegated power." Op. at 23.  Moreover, the SEC's implausible position would

lead to absurd constitutional results, classifying nearly any conceivable delegation by Congress as "executive" authority merely because the delegated power is now wielded by an executive agency exercising its "discretion." This tautological contrivance would vitiate the nondelegation doctrine altogether, and it is difficult to see how the delicate balance of divided and separated powers constructed by the Framers could then survive.

This Court is bound by the Supreme Court's unambiguous doctrine that the power to relegate claims to administrative tribunals is "peculiarly within the authority of the legislative department," a congressional assignment that must be "exclusive." The abject lack of any "intelligible principle" presents a textbook non-delegation violation, invalidating the SEC's assignment of its securities fraud claims against Jarkesy to its own in-house courts.

## THE PANEL WAS REQUIRED BY PRECEDENT TO INVALIDATE THE STATUTORY SCHEME INSULATING SEC ALJS IN VIOLATION OF U.S. CONST. ART. II, § 3

The SEC's Petition asserts that the en banc Court should "further review" the panel majority's conclusion, following *Free Enterprise Fund v. PCAOB,* that the agency's ALJs preside in violation of the Take Care Clause, U.S. CONST. art. II, §3. 561 U.S. 477 (2010); Petition at 14-17. The SEC's ALJs, constitutional officers, are protected by statutory removal restrictions, but can only be removed for good cause by the Merit Systems Protection Board, the members of which—like the SEC

commissioners—are *also* protected from removal. *See* Op. at 26-28. The panel simply followed the *Free Enterprise* Court's holding that two layers of tenure protection violate the Take Care Clause. *Id.*

Not so long ago, the SEC agreed with Jarkesy and the panel, admitting to the Supreme Court in 2018 that "the statutory scheme provides for at least two, and potentially three, levels of protection against presidential removal authority," and that without judicial rewriting of the statutory scheme, these "limitations…on removal of the Commission's ALJs would be unconstitutional."[15] Under the doctrine of judicial estoppel, the SEC should now be estopped from asserting its contrary representation to this Court in the Petition.[16] Still, the SEC now insists that "further review" is "warranted" because: the panel's decision is in "considerable tension" with a recent Ninth Circuit case; that the insulation of the SEC's ALJs is not as "rigorous" as the restrictions analyzed in *Free Enterprise*; and that this Court should avoid the Take Care violation by "sever[ing]" the offending portions of the statutory scheme. *Id.* None of these pleas stands up to scrutiny.

The Ninth Circuit case—*Decker Coal Co. v. Pehringer*—is not even relevant, presenting effectively a *single* level of "for cause" insulation from presidential

---

[15] *See* Br. For Resp't Supporting Pet'r, *Lucia v. SEC*, 2018 WL 1251862, at *52-53 (U.S. Feb. 21, 2018).

[16] *See, e.g.*, *Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015).

control.  8 F.4th 1123, 1133 (9th Cir. 2021).  The SEC's claim that the tenure protections for its ALJs are not as "rigorous" as those described in *Free Enterprise* misses the point; the ALJ's are protected by two (and arguably three) layers of protection, period—rigorous enough to subvert presidential control.  And the SEC's invitation to reimagine or "sever" unidentified parts of the statutory scheme is both impracticable and waived by its failure—before the panel and in its Petition—to even suggest how such complex judicial surgery, on multiple statutes, might be accomplished.

## CONCLUSION

The panel conscientiously applied the law *as it exists*—not as it may have existed fifty years ago or as the SEC would prefer it to be today—and rendered a decision that inevitably follows from that precedent.  The Petition should be denied.

Respectfully Submitted,

By:  /s/ S. Michael McColloch
S. MICHAEL MCCOLLOCH, PLLC
**S. Michael McColloch**
E-mail: smm@mccolloch-law.com
Phone: 214.643.6055
KAREN COOK, PLLC
**Karen L. Cook**
E-mail: karen@karencooklaw.com
Phone: 214.643.6054
6060 N. Central Expressway, Suite 500
Dallas, Texas 75206
Fax: 214.295.9556

ATTORNEYS FOR PETITIONERS

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2022, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/EFC filing system and that service on all parties will be accomplished through the appellate CM/ECF system.

By: */s/ S. Michael McColloch*
S. Michael McColloch

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of FED. RULES APP. PROC. 32(g)(1) and 5TH CIR. R. 32.2, because, excluding the parts of the document exempted by FED. RULES APP. PROC. 32(f), this document does not exceed 15 pages in length and contains 3,899 words, as counted by Microsoft Word.

By: */s/ S. Michael McColloch*
S. Michael McColloch